**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | |
|---|---|
| **RUSSELL C. WIDMAR**,         ) | |
|            ) | |
| *Plaintiff,*       ) | |
|            ) | |
| *vs.*          ) | |
|            ) | |
| **THE CITY OF KANSAS CITY**,     ) | |
|  **MISSOURI**, a municipal corporation,    ) | |
|  WAYNE A. CAUTHEN, in his individual   ) | |
|  and official capacities, MAYOR KAY    ) | |
|  BARNES, in her official capacity, ALVIN   ) | **Civil Action No.** |
|  BROOKS, in his official capacity,     ) | |
|  BONNIE  SUE COOPER, in her official   ) | |
|  capacity, CHARLES EDDY, in his official ) | |
|  capacity, JOHN FAIRFIELD, in his official) | |
|  capacity, JIM GLOVER, in his official    ) | |
|  capacity, DEB HERMANN, in her official   ) | |
|  capacity, SAUNDRA McFADDEN-     ) | |
|  WEAVER, in her official capacity,     ) | |
|  BECKY NACE, in her official capacity,   ) | |
|  TROY NASH, in his individual and     ) | |
|  official capacities, TERRY RILEY, in his   ) | |
|  individual and official capacities, JIM    ) | |
|  ROWLAND in his official capacity, BILL   ) | |
|  SKAGGS in his official capacity,     ) | |
|  EMANUEL CLEAVER II, in his     ) | |
|  individual and official capacities, and    ) | |
|  TERESA LOAR**,** in her individual and   ) | |
|  official capacities,        ) | |
|            ) | |
| *Defendants*.      ) | |
| _____ ) | |

## COMPLAINT

COMES NOW Plaintiff, Russell C. Widmar, by and through his counsel of record, and

states the following as his Complaint against the City of Kansas City, Missouri, City Manager

Wayne Cauthen, in his individual and official capacities, the present members of the City

Council of the City of Kansas City, Missouri, in their official capacities, Mayor Kay Barnes, in

her official capacity, City Councilman Terry Riley, in his individual and official capacities, City Councilman Troy Nash, in his individual and official capacities, former Mayor Emanuel Cleaver II, in his individual and official capacities, and former City Councilwoman Teresa Loar, in her individual and official capacities:

## Nature of Action

1. Plaintiff, a member of the Caucasian race, is the former Director of Aviation for the City of Kansas City, Missouri ("City"). During Plaintiff's career in Kansas City he successfully planned, developed and oversaw a ten-year capital improvements program totaling over $1 billion, including a $256 million dollar terminal building renovation project at the Kansas City International Airport ("KCI"). This ten-year program was revised to $600 million as a result of the events of September 11, 2001. While Director of Aviation, Plaintiff successfully negotiated with Trans World Airlines to have it retain its major maintenance overhaul base in Kansas City thus saving the City 1,500 jobs. According to an independent survey by Elite Services Group, KCI moved from 28th place to 1st place as the most technologically advanced commercial airport in the country during Plaintiff's tenure as Director of Aviation. Two other highly prestigious awards were won also during Plaintiff's tenure: KCI won Grand Prix du Voyage 2000 World Travel Awards as the "Best Friend of the Environment" and the "Most People Friendly Airport." The Grand Prix World Travel Award Committee is based in Paris, France.

2. While employed with the City, Plaintiff reported to senior City officials that contracts for planned or current work in connection with the KCI capital improvements program were being manipulated in unethical manners that violated local, state and/or federal contract

2

procuring laws, regulations, ordinances, and established City and department policies. Plaintiff refused to participate in illegal and/or unethical conduct, and instead, Plaintiff recommended that contracts be awarded only in the City's best interest, pursuant to all applicable local, state, and federal laws, rules, regulations, and ordinances, and pursuant to the City's policies.

3.      During the course of these referenced management actions, Plaintiff met with significant opposition.  In particular, Plaintiff's actions were criticized by certain members of the City's African American population when he approved a recommendation that the gift and news concession contract for KCI be awarded to Paradies, the concessionaire which had successfully operated this same concession at KCI for the previous eight years. Plaintiff approved this recommendation despite being informed that Paradies' long-term minority subtenant, Denise Gilmore, had voluntarily associated herself with two other companies including Hudson Group, a different entity which bid on the same concession contract.   Following Ms. Gilmore's defection, Paradies selected Mr. and Mrs. Elliot Threatt as its minority partners.  The City Council later voted to award KCI's concession contract to Paradies.

4.      The reasons for Ms. Gilmore's switch in allegiance is presently unknown to this Plaintiff. For reasons also presently unknown to Plaintiff, certain very influential members of Kansas City's African American community became outraged when the Hudson Group – with whom Ms. Gilmore was newly associated – failed to obtain the subject KCI concession contract.  These reasons will be the subject of formal discovery, including Ms. Gilmore's relationship (economic or otherwise) with Revs. Thompson and Cleaver.

3

In this regard, the opposition successfully pressured the City into conducting an independent investigation regarding this contract process. Following that investigation, however, no wrongdoing on the part of Plaintiff, or the Department of Aviation, was found.

5.    Plaintiff was subjected to further criticism and opposition after running afoul of City Manager Cauthen when a member of the Aviation Department staff was unable to hold, or delay, a commercial flight for Mr. Cauthen to board when he (Cauthen) arrived at the airport late. Similarly, Plaintiff's management actions were overtly criticized by Defendant Loar subsequent to his reporting to City officials his concerns that Ms. Loar's actions in conjunction with the awarding of contracts at KCI posed conflicts of interest with her role as a member of the City Council.

6.    In the aftermath that followed, Plaintiff was publicly ridiculed, and subjected to comments and innuendo that in context falsely suggested that he is racist. City officials, including certain of the named Defendants, made public comments that fostered resentment towards Plaintiff in the African American community in Kansas City. Further, City officials, including certain of the named Defendants, failed to come to Plaintiff's defense in the barrage of heated public debate and ostracism that followed.

7.    Subsequent to these events, Defendant City Manager Wayne Cauthen repeatedly found reasons to treat the Plaintiff is a disparate and discriminatory manner (in essence denigrating his status to that of "second-class citizen") including refusing to meet with Plaintiff when the course of airport business required Cauthen's involvement. Throughout the course of these events, however, the City Manager continued to maintain

4

that Plaintiff was performing his job duties satisfactorily until immediately before, and following, Plaintiff's employment discharge.  City Councilman Skaggs, in charge of the Council's Aviation Committee, continued to praise Plaintiff's efforts on behalf of KCI and the City.  Despite his objective superior job performance, Defendant City Manager Cauthen discharged Plaintiff from his position not long before he was to vest in the two City retirement plans.

8.     The City and City Manager's post-employment actions also are suspect as being racially motivated.   Plaintiff – with the assistance of legal counsel – attempted to negotiate a (typical) severance package with the City.  During this time, a city appointee associated with the Mayor's office told Plaintiff's then legal counsel that Plaintiff would not be working out a severance package "if the black ministers had anything to say about it."

9.     Plaintiff nevertheless successfully negotiated a severance package with the City in accordance with standard practices (having longstanding precedent at the City) regarding the same.  Defendant Cauthen, however, then took steps which led to a closed-session vote of the empaneled City Council – upon information and belief, an unprecedented action – at which time City's (standard) approval of the Plaintiff's severance package was denied and/or rescinded.  Further, City officials made post-employment public comments about Plaintiff's job performance which were false, and which harmed him in his professional and personal reputation.  By virtue of these actions, and other actions, Plaintiff contends that he was discriminated against on the basis of race, and age; and that his constitutional rights, together with other statutory and common law rights, were violated unlawfully by these Defendants.

## **Statutory Bases for Claims**

10.     This is an action brought pursuant to Section 1977 of the Civil Rights Act of 1866, as

amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981 (hereinafter § 1981), Section

1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, as amended (hereinafter § 1983),

Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

(hereinafter Title VII), Title VI of the Civil Rights Act of 1964, as amended, 42 U.S.C. §

2000d-1 *et. seq.* (hereinafter Title VI), 42 U.S.C. § 1988(b), the Age Discrimination in

Employment Act, 29 U.S.C. § 623 *et seq.* (hereinafter the ADEA), the First and

Fourteenth Amendments to the United States Constitution, the Missouri Human Rights

Act, §§ 213.010 *et seq*, RSMo, the Missouri Constitution and various state common law

claims seeking declaratory, injunctive, equitable and monetary relief as remedies for

Defendants' unlawful and/or discriminatory employment practices.  As pled more

specifically below, Defendants have unlawfully discriminated against Plaintiff on the

basis of race and age.

## **Jurisdiction and Venue**

11.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1337, and 1343.

12.     This Court also has jurisdiction pursuant to 28 U.S.C. § 1332 in that the Plaintiff and the

Defendants are of diverse citizenship, and the amount in controversy is in excess of

$75,000 , exclusive of interest and costs.

13.     This Court has supplemental jurisdiction of the State law claims pursuant to 28 U.S.C. §

1367.

14.     Venue is proper within this District because the violations alleged in this Complaint took place in the Western District of Missouri, Plaintiff was effected by the alleged violations in the Western District of Missouri and the Defendants may be found in the Western District.

## **Parties**

15.     Plaintiff Russell C. Widmar is a citizen of the United States, and a resident of the State of California.  At all times relevant to the allegations set forth in this Complaint, however, Plaintiff was a resident of the State of Missouri.

16.     At all relevant times, Defendant Kansas City, Missouri, was and is, a municipal corporation formed as a Constitutional Charter City, a body politic, and a political subdivision of the State of Missouri organized and existing under its laws.

17.     At the times pertinent to this Complaint, Wayne Cauthen was, and is, City Manager for the City of Kansas City, Missouri, appointed by the Mayor with the advice and consent of the City Council of Kansas City, Missouri, and acting as the chief administrative officer of the City.

18.     Present Mayor Kay Barnes, and City Council members Alvin Brooks, Bonnie Sue Cooper, Charles Eddy, John Fairfield, Jim Glover, Deb Hermann, Saundra McFadden-Weaver, Becky Nace, Jim Rowland, and Bill Skaggs are present members of the City of Kansas City, Missouri's City Council, and are sued in their official capacity alone.  These individuals reside in the City of Kansas City, Missouri, and are not personally responsible for the wrongdoing alleged.

19. Present City Councilmen Troy Nash and Terry Riley are sued in their official capacity, and in their individual capacity. At all times relevant to the allegations of this Complaint, Mr. Nash and Mr. Riley served as City Councilmen. Mr. Nash and Mr. Riley reside in Kansas City, Missouri.

20. At all times material to this Complaint, Teresa Loar was either an elected member or formerly elected member of the City Council of Kansas City, Missouri (having left office in or about April 1993). Based on information and belief, former City Councilwoman Loar resides in Kansas City, Missouri.

21. At times relevant to this Complaint, Emanuel Cleaver II was former Mayor of the City of Kansas City, Missouri, and resided in Kansas City, Missouri. Based on information and belief, former Mayor Cleaver continues to maintain a residence in Kansas City, Missouri.

**Administrative Procedures**

22. On or about May 7, 2004, Plaintiff timely filed a charge of discrimination with the Missouri Human Rights Commission (hereinafter "MHRC") alleging discrimination on the basis of race, color, age, and in retaliation. This charge was dually filed with the United States Equal Employment Opportunity Commission (hereinafter "EEOC"). Pursuant to its policies and procedures the EEOC forwarded the charge to the United States Department of Justice (hereinafter "DOJ").

23. On or about April 4, 2005, the MHRC issued its Notice of Right to Sue (attached and marked as Exhibit A) stating that Plaintiff is entitled to file a civil action under the Missouri Human Rights Act.

8

24. On or about June 2, 2005, the EEOC issued its Notice of Right to Sue (attached and marked Exhibit B) authorizing Plaintiff's entitlement to file a civil action under Title VII and the ADEA.

25. On or about June 2, 2005, the DOJ, issued its Notice of Right (attached and marked Exhibit C) stating that Plaintiff is entitled to file a civil action under Title VII.

26. Plaintiff is not required to exhaust any administrative remedies prior to filing causes of action under § 1981, § 1983, or Title VI.

27. Plaintiff filed the Complaint in this case within ninety (90) days after the date on which he received his Notices of Right to Sue from the MHRC, EEOC, and DOJ.

## Factual Background

28. Plaintiff was appointed by former City Manager Robert L. Collins as the Director of Aviation for the City of Kansas City, Missouri pursuant to § 2-162 of the City's Administrative Code in August 1999.

29. During Plaintiff's over four-year tenure as the City's Director of Aviation he received merit increases in all years in which such increases were available to all department heads.

30. At all times relevant to this Complaint, Plaintiff met, or exceeded, the City's performance standards.

31. Prior to his retirement, former City Manager Robert Collins was not critical of Plaintiff's job performance, and to the contrary, suggested that Plaintiff's job performance excelled beyond expectations.

32. Plaintiff was Director of Aviation at the time of the tragic events on September 11, 2001.

9

33. Despite the tragic events of September 11th, Plaintiff was able to keep the terminal building renovation project at KCI on schedule, and within budget.

34. During the process of awarding the gift and news concession contract at KCI, certain members of Kansas City's African-American community, including former Mayor Emanuel Cleaver II, falsely accused Plaintiff of racial bias.

35. During and after the awarding of this same concession contract at KCI, certain members of Kansas City's African-American community, including former Mayor Emmanuel Cleaver, exerted pressure or influence upon the City, City Council, former City Manager Collins and/or City Manager Cauthen to terminate Plaintiff's employment as the City's Director of Aviation.

36. Former City Manager Collins and City Manager Cauthen knew of Plaintiff's desire to remain in the City's employ at least for the 5-year period at which time he would vest in the City's two pension plans.

37. At the time City Manager Cauthen discharged Plaintiff, he (Cauthen) was aware that the act of discharging Plaintiff would disallow Plaintiff to vest in the City's two pension plans.

38. Defendant City Manager Cauthen, and the City of Kansas City, Missouri, terminated Plaintiff's employment on November 12, 2003.

39. In accordance with standard practice at the City, the City Attorney and Plaintiff reached an agreement as to the amount of his severance package.

40. City Manager Cauthen caused Plaintiff's agreed upon severance package to be voted upon by the City Council.

10

41. Plaintiff's severance package was voted out of the Council Finance Committee, but failed to pass during a vote of the full Council held in executive session. The sole no vote out of the Finance Committee was cast by Councilman Riley, an African American.

42. Based on information and belief, the severance packages of other high-level employees were not submitted to a vote by the City Council.

43. Other high-level employees were offered a severance package with better terms than the severance package offered to Plaintiff.

44. Three other department heads terminated at the same time as Plaintiff were transferred to other positions with the City.

45. Plaintiff was the only department head to become actually unemployed by virtue of Mr. Cauthen and the City's action in discharging the referenced department heads.

46. City Councilman Bill Skaggs, Chair of the City Council's Aviation Committee at the time the Plaintiff was discharged, encouraged the City Manager to allow Plaintiff to finish out the renovation project in progress at KCI.

47. Based on information and belief, to the extent that the City of Kansas City, Missouri claims any immunity from liability for the actions of its employees, or agents, acting within their respective scope of employment, or agency, any claimed immunity has been waived by virtue of the City's purchase of insurance pursuant to § 537.610 RSMo.

## COUNT I – VIOLATION OF § 1981

48. Unless pled alternatively in support of this Count of the Complaint, Plaintiff repeats each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

11

49.     At the relevant time, Plaintiff had a contractual employment relationship with Defendant City of Kansas City, Missouri.

50.     The alleged race discrimination concerned an area enumerated in § 1981.  Defendants succumbed to pressure from certain segments of Kansas City's African American population in retaliating against Plaintiff, and terminating his employment.  Among other actions, City Manager Cauthen interfered with Plaintiff's contractual relationship with the City by terminating his employment just months shy of Plaintiff's vesting in two City retirement plans.  These actions were racially motivated, and in retaliation for Plaintiff's conduct in conjunction with the awarding of City contracts at KCI.

51.     Defendants Terry Riley, Troy Nash and Emanuel Cleaver also interfered with Plaintiff's contract of employment with the City, and discriminated against Plaintiff on the basis of race.  Among other actions, these named defendants publically condemned Plaintiff for actions taken in conjunction with the awarding of City contracts, and contributed to the atmosphere which falsely and erroneously labeled Plaintiff as racist.

52.     Further, City Council members Nash and Riley voted against the severance package upon which the City and Plaintiff had agreed.  During the vote, said City Council members acted in an administrative capacity.

53.     The City of Kansas City, Missouri City Council is the chief legislative and administrative body for the City pursuant to the City Charter.  Under its power and authority, the City Council had final say on whether Plaintiff would receive his negotiated severance package.  As to this matter, the City delegated its policymaking authority to its City Council.  During the vote on this matter the members of the City Council were acting in

12

an administrative capacity.

54. Former Mayor Cleaver publically condemned Plaintiff and falsely labeled Plaintiff's lawful actions as "obscene" and "unconscionable." Former Mayor Cleaver contributed to the atmosphere which falsely and erroneously labeled Plaintiff as racist.

55. Plaintiff is a member of a class protected under the umbrella of § 1981.

56. At all relevant times, Plaintiff was – and is – qualified for the position of Director of Aviation for the City of Kansas City, Missouri.

57. At the times relevant to Plaintiff's allegations he was satisfactorily performing his job duties.

58. Plaintiff suffered adverse employment action in that he was subjected to retaliation and discharge that would not have taken place except for his race. Plaintiff's race was a substantial, or motivating factor in the adverse employment actions taken against him.

59. The adverse employment actions occurred under circumstances giving rise to an inference of unlawful race discrimination.

60. At all relevant times, Defendant Wayne Cauthen as City Manager was chief administrative officer for the City, and acted pursuant to the authority of his office and within the scope of that authority. As chief administrative officer, City Manager Cauthen has final authority for administering personnel decisions involving the City's department heads, including the Director of Aviation. The City has delegated its policy-making authority to Defendant Cauthen.

61. Further, Mr. Cauthen was personally involved in the adverse employment actions of which Plaintiff complains, he interfered with the employment contract between the City

13

and Plaintiff, effected Plaintiff's discharge, and can be held personally liable for his unlawful actions.

62. Former Mayor Cleaver was personally involved in the adverse employment actions taken against Plaintiff, he interfered with the employment contract between the City and Plaintiff, and can be held personally liable for his unlawful actions.

63. Councilman Nash was personally involved in the adverse employment actions taken against Plaintiff, he interfered with the employment contract between the City and Plaintiff, and can be held personally liable for his unlawful actions.

64. Councilman Riley was personally involved in the in the adverse employment actions taken against Plaintiff, he interfered with the employment contract between the City and Plaintiff, and can be held personally liable for his unlawful actions.

65. Defendants Cauthen, Nash, Riley and Cleaver violated clearly established statutory or constitutional rights of which a reasonable person would have known.

66. Defendants City of Kansas City, Wayne Cauthen, Terry Riley, Troy Nash and Emanuel Cleaver, at the time of their respective alleged discriminatory acts, were "persons" as contemplated by § 1983, and acting under color of state law.

67. Defendants Cauthen, City of Kansas City, Nash, Riley, and Cleaver caused the deprivation of a right, privilege, or immunity secured by federal law.

68. The unlawful actions complained of were intentional.

69. Defendants Cauthen, Nash, Riley and Cleaver were acted with evil motive or intent, or in reckless or callous indifference to Plaintiff's federally protected rights.

14

70.     As a result of these unlawful actions Plaintiff suffered, and continues to suffer injury, and pecuniary and nonpecuniary damages.

## **COUNT II - CONSTITUTIONAL FREEDOM OF SPEECH**

71.     Unless pled alternatively in support of this Count of the Complaint,  Plaintiff repeats each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

72.     On several occasions, Plaintiff voiced his concerns that city, state and/or federal laws, regulations and policies were not being followed in the awarding of contracts at KCI. Among other city officials, Plaintiff specifically raised these concerns with former City Manager Collins, City Manager Cauthen, and City Attorney Galen Beaufort.   Plaintiff also raised his concerns to certain other public officials.

73.     Plaintiff's speech addressed a matter of public concern.

74.     Plaintiff's speech was – and is – protected by the First Amendment to the United States Constitution, and Article I, Section 8 of the Missouri Constitution.

75.     As a result of his protected speech, Plaintiff was retaliated against, and suffered other adverse employment actions including discharge.

76.     False and public comments regarding Plaintiff by Defendants Cauthen, Cleaver, Loar, and Riley contributed to an atmosphere in which Plaintiff's reputation in the community was falsely established as that of a racist.

77.     Plaintiff's protected speech was a substantial or motivating factor in the adverse employment actions of which he complains, including retaliation, discharge, and post-employment action on his negotiated severance package.

15

78.     At all relevant times, Defendant Wayne Cauthen as City Manager was chief administrative officer for the City, and acted pursuant to the authority of his office and within the scope of that authority.  As chief administrative officer, City Manager Cauthen has final authority for administering personnel decisions involving the City's department heads, including the Director of Aviation.  The City has delegated its policy-making authority to Defendant Cauthen.

79.     Defendants were each "persons" as contemplated by § 1983, and acting under color of state law.

80.     The actions of Defendants deprived Plaintiff of a right, privilege, or immunity secured under the United States Constitution.

81.     Further, Mr. Cauthen, former Mayor Cleaver, Ms. Loar, Mr. Riley and Mr. Nash were personally involved in the deprivation of Plaintiff's constitutional rights as pled herein, and can be held personally liable for their respective unconstitutional actions.

82.     Defendants Cauthen, Cleaver, Loar, Riley and Nash violated clearly established statutory or constitutional rights of which a reasonable person would have known.

83.     Defendants Cauthen, Loar, Cleaver, Riley and Nash acted with evil motive or intent, or in reckless or callous indifference to Plaintiff's federally protected rights.

84.     As a result of this constitutional violation Plaintiff suffered, and continues to suffer, injury, and pecuniary and nonpecuniary damages.

### COUNT III – CONSTITUTIONAL DUE PROCESS AND EQUAL PROTECTION

85.     Unless pled alternatively in support of this Count of the Complaint,  Plaintiff repeats each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

16

86. Plaintiff has a constitutionally protected liberty interest in his continued employment as Director of Aviation for the City of Kansas City, Missouri.

87. Pervasive, continuing, and false public innuendo had the effect of labeling Plaintiff as a racist. The public outcry arose as a backlash for Plaintiff's voiced concerns and criticisms about the awarding of contracts at KCI, and his refusal to condone illegal and/or unethical actions. City officials, including but not limited to former City Manager Collins, former Mayor Cleaver, City Council members Loar, Nash and Riley stood by and did nothing to avert, counteract or dispel the community's belief that Plaintiff's was acting in a racist manner. Instead, Defendants actively encouraged such beliefs. The Defendants' actions, and inactions, created a false and damaging impression. As a result of these actions, and Plaintiff's subsequent dismissal from the City's employ, Plaintiff's name was blackened and his personal and professional reputation were damaged. Because Plaintiff's integrity, good name, honor and reputation were damaged, Plaintiff was, and continues to be, stigmatized. Plaintiff was also damaged in that employment opportunities that otherwise might be readily available were foreclosed.

88. Defendants are "persons" within the meaning contemplated by § 1983. Defendants, and each of them, acted under color of state law.

89. Defendants' actions against Plaintiff were intentional, and racially motivated.

90. Defendants Cauthen, Cleaver, Loar, Nash and Riley violated clearly established constitutional rights of which a reasonable person would have known.

91. Defendants Cauthen, Loar, Cleaver, Riley and Nash acted with evil motive or intent, or in reckless or callous indifference to Plaintiff's federally protected rights.

17

92.     The City did not provide Plaintiff with fundamental elements of due process in connection with his firing including (but not necessarily limited to) pre-termination notice of his dismissal and a pre-termination hearing.

93.     In fact, Defendant Cauthen met with the editorial board of the *Kansas City Star* about his decision to terminate the employment of Plaintiff, and the three other department heads, prior to meeting with those individuals. *Kansas City Star* employees knew of Plaintiff's discharge from the City's employ before he did.

94.     The City likewise did not provide Plaintiff with a post-termination hearing – to which Plaintiff is and should be entitled for a variety of reasons including to clear his name.

95.     The City and City Manager Cauthen deprived Plaintiff of rights secured to him by the Fourteenth Amendment to the United States Constitution, and Article I, Section 10 of the Missouri Constitution, by not affording him procedural due process. Defendants' actions in denying Plaintiff due process were arbitrary and/or capricious.

96.     Plaintiff is also entitled to equal protection of the laws of the United States under the Fourteenth Amendment.

97.     The adverse employment actions taken against Plaintiff would not have been taken if Plaintiff had been a member of a minority race. The complained of actions taken by the Defendants were intentional.

98.     Plaintiff was treated differently from other department heads removed from their jobs at the same time as Plaintiff.

99.     At all relevant times, Defendant Wayne Cauthen as City Manager was chief administrative officer for the City, and acted pursuant to the authority of his office and

within the scope of that authority. As chief administrative officer, City Manager Cauthen has final authority for administering personnel decisions involving the City's department heads, including the Director of Aviation. The City has delegated its policy-making authority to Defendant Cauthen.

100. Defendants City and City Manager Cauthen deprived Plaintiff of his constitutional right to equal protection.

101. As a result of these constitutional violations Plaintiff suffered, and continued to suffer injury, and pecuniary and nonpecuniary damages.

## COUNT IV – TITLE VII RACE DISCRIMINATION

102. Unless pled alternatively in support of this Count of the Complaint, Plaintiff repeats each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

103. The City is an employer within the meaning of Title VII.

104. Defendant Cauthen is an employer, or agent of an employer, within the meaning of Title VII.

105. During his employment as Director of Aviation, Plaintiff was subjected to adverse treatment motivated by racial discrimination.

106. City Manager Cauthen refused to meet with Plaintiff on the same basis as he met with other department and division heads who were black.

107. City Manager Cauthen fostered a discriminatory atmosphere in which Plaintiff was treated as one of "them" rather than "one of us" on equal footing with other management personnel as part of a team.

19

108. The City and City Manager succumbed to pressure from the African-American community to fire Plaintiff because of his position on the awarding of contracts at KCI which the community labeled racially biased.

109. Defendants failed to take action when it became known that Plaintiff was being discriminated against on the basis of race, or his perceived racist conduct.

110. The City and City Manager's post-employment actions also subjected plaintiff to adverse treatment that was racially motivated.

111. At least three other discharged department heads were transferred to other positions in the City.

112. Based on information and belief, other similarly situated top-level employees discharged from the City's employ were treated more favorably than Plaintiff in that they were offered superior severance packages.

113. Based on information and belief, other discharged employees were treated more favorably in that Defendant Cauthen submitted only Plaintiff's mutually agreed upon severance package to vote by the City Council.

114. Plaintiff's agreed upon severance package was voted down. Defendants Terry Riley, and Troy Nash voted against Plaintiff's agreed upon severance package. During the vote, these Council members were acting within the scope of their employment or duty, and their vote was in an administrative capacity.

115. Defendant Cauthen was acting within the scope of his employment and agency.

116. Defendants Cauthen, Nash and Riley are personally liable for their unlawful actions.

117. Defendants Cauthen, Nash and Riley acted with evil motive or intent, or in reckless or callous indifference to Plaintiff's federally protected rights.

118. City Manager Cauthen, Council members Riley, Nash, and the City's disparate treatment of Plaintiff was racially motivated.

119. The unlawful actions of which Plaintiff complains were intentional.

120. As a result of this unlawful race discrimination Plaintiff has suffered, and continues to suffer injury, and pecuniary and nonpecuniary damages.

## COUNT V – AGE DISCRIMINATION

121. Unless pled alternatively in support of this Count of the Complaint, Plaintiff repeats each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

122. The City is an employer within the meaning of the ADEA.

123. Plaintiff is protected by the ADEA because he is an individual over the age of 40. At the time of his discharge Plaintiff was well over 57 years-old.

124. At all times relevant to the actions of which he complains, Plaintiff was satisfactorily performing his job duties. Plaintiff's performance met, or exceeded, the City's legitimate expectations.

125. Despite his satisfactory job performance Defendants terminated his employment as Director of Aviation.

126. Plaintiff was replaced by a worker who, although over the age of 40, was significantly younger. Based on information and belief, Plaintiff's replacement was 42 years-old. In addition, the individual was not as equally qualified as Plaintiff.

21

127. An inference of unlawful discrimination on the basis of age is also raised by the fact that Plaintiff was terminated only months before he was to vest in his City retirement plans.

128. Defendants' discharge of Plaintiff was age-related, or age was a substantial or motivating factor in the decision to terminate Plaintiff's employment.

129. Plaintiff's discharge was without good cause.

130. Defendants' violation of the ADEA was willful.

131. As a result of Defendants' unlawful actions, Plaintiff suffered, and continues to suffer injury, and pecuniary and nonpecuniary damages.

### COUNT VI – VIOLATION OF TITLE VI

132. Unless pled alternatively in support of this Count of the Complaint, Plaintiff repeats each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

133. Title VI prohibits discrimination on the basis of race in federally funded programs.

134. Defendant City of Kansas City, Missouri received federal funds for its aviation department. Based on information and belief, said funds were used, at least in part, for salaries of aviation department employees.

135. As fully alleged in the preceding counts of this Complaint, Plaintiff was subjected to adverse employment actions on the basis of race, or race was a substantial or motivating factor in the referenced adverse employment actions.

136. Defendant Cauthen is personally liable for his unlawful actions.

137. Defendant Cauthen acted with evil motive or intent, or in reckless or callous indifference to Plaintiff's federally protected rights.

22

138.     As a result of the unlawful actions of Defendants City of Kansas City, Missouri, and City Manager Cauthen, Plaintiff has suffered and continues to suffer injury and pecuniary and nonpecuniary damages.

**COUNT VII – MISSOURI HUMAN RIGHTS ACT – AGE DISCRIMINATION**

139.     Unless pled alternatively in support of this Count of the Complaint,  Plaintiff repeats each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

140.     At all material times, Plaintiff was a person over the age of 40, and under the age of 70. Plaintiff falls within the class of persons protected against age discrimination by the Missouri Human Rights Act.

141.     At the times relevant to this Complaint, Plaintiff was satisfactorily performing his job duties, and his job performance met, or exceeded, the City's expectations.

142.     Plaintiff was discharged from his employment on the basis of age, or his age was a substantial or motivating factor in his discharge.

143.     Plaintiff was replaced by an individual who, although also in the protected age group, was less qualified than Plaintiff and significantly younger.

144.     Plaintiff's discharge from employment just a few months short of his vesting in the City's retirement programs creates an inference of age discrimination.

145.     Defendants City of Kansas City, and City Manager Cauthen acted in an outrageous manner in discriminating against Plaintiff on the basis of age.

146.     As a result of Defendants' unlawful action, Plaintiff has suffered, and continues to suffer injury, and pecuniary and nonpecuniary damages.

## COUNT VIII – MISSOURI HUMAN RIGHTS ACT – RACE DISCRIMINATION

147.    Unless pled alternatively in support of this Count of the Complaint,  Plaintiff repeats each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

148.    Plaintiff is a member of a protected class by virtue of his race.

149.    During his period of employment Plaintiff consistently, and satisfactorily, performed his job duties.

150.    Despite his satisfactory job performance, Plaintiff was discharged from his employment with the City because of his race, or race was a substantial or motivating factor in his discharge.

151.    Other discharged employees were treated more favorably than Plaintiff.

152.    Plaintiff also was subjected to other adverse employment actions during his tenure of employment.

153.    Plaintiff's race was the reason for, or a substantial or motivating factor in Defendants' employment actions.

154.    Defendant Cauthen is personally liable for his unlawful actions.

155.    Defendant Cauthen acted with evil motive or intent, or in reckless or callous indifference to Plaintiff's federally protected rights.

156.    As a result of the City of Kansas City and City Manager Cauthen's unlawful actions, Plaintiff suffered, and continues to suffer, injury and pecuniary and nonpecuniary damages.

24

## COUNT IX– INTERFERENCE WITH EMPLOYMENT CONTRACT

157.   Unless pled alternatively in support of this Count of the Complaint,  Plaintiff repeats each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

158.   At the times material to this Complaint, Plaintiff was employed by the City of Kansas City, Missouri as its Director of Aviation, and was legally entitled to, and receiving benefits from that relationship in the form of salary, health care insurance, retirement plans and/or pensions, and other fringe benefits with a reasonable expectancy of financial benefit.

159.   Plaintiff had a substantial, or reasonable, expectation of continued employment with the City.

160.   Defendants Cauthen, Loar, Nash, Riley and Cleaver were aware of Plaintiff's business relationship with the City of Kansas City, Missouri.

161.   Defendants Cauthen, Loar, Nash, Riley and Cleaver intentionally interfered with that business relationship inducing or causing a termination of that relationship.

162.   The actions of Defendants Cauthen, Loar, Nash, Riley and Cleaver were without justification, or sufficient justification.

163.   Defendants Cauthen, Loar, Nash, Riley, and Cleaver are personally liable for their unlawful actions.

164.   Defendant City of Kansas City is vicariously liable for the acts of its agents or employees while acting in the scope of their employment, or agency.

165.   As a result of the disruption, and termination of this business relationship Plaintiff has suffered, and continues to suffer injury, and pecuniary and nonpecuniary damages.

## COUNT X – WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

166.    Unless pled alternatively in support of this Count of the Complaint, Plaintiff repeats each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

167.    Plaintiff refused to condone and/or agree to illegal and/or unethical actions related to the City Aviation Department contracts.

168.    Plaintiff took actions that public policy supports: recommending that fair and honest bidding procedures be followed for City Aviation Department contracts.

169.    Plaintiff, and/or his department were unable to grant City Manager Cauthen's request to stop and/or delay a commercial aircraft flight so that he could make such flight despite his tardy arrival at KCI.

167.    Plaintiff challenged actions by Ms. Loar related to procurement contracts at KCI which he considered to be conflicts of interest with her role as a City Council member and an employee of Black & Veatch.

168.    Plaintiff reported these violations of law, ethics or public policy to his superiors, and other public authorities.

169.    Plaintiff was discharged because he took actions that public policy would support, for reporting illegal and unethical conduct, and for refusing to condone and/or agree to illegal and unethical conduct.

170.    As a consequence of Plaintiff's lawful actions he was retaliated against, and ultimately discharged from his position as Director of Aviation.

171.    Defendant Cauthen is personally liable for his unlawful actions.

26

172. The City is vicariously liable for the acts of its employees, or agent, in the scope of their employment or agency.

173. As a result of wrongful discharge, Plaintiff suffered and continues to suffer injury, and pecuniary and nonpecuniary damages.

## COUNT XI – DETRIMENTAL RELIANCE

174. Unless pled alternatively in support of this Count of the Complaint, Plaintiff repeats each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

175. Plaintiff agreed to take the Director of Aviation position with the City of Kansas City under representations made by now-retired City Manager Bob Collins that he would keep his job so long as he satisfactorily performed his job.

176. At his own expense, Plaintiff sold his house in Salt Lake City to move to Kansas City.

177. During his employment with the City, he invested thousands of dollars in the City's pension funds in reliance on representations that he would not be suddenly fired despite superior performance.

178. As a result of his experience and performance, Plaintiff periodically received overtures from individuals representing other airport authorities and governmental entities requesting that he consider leaving his employ with the City of Kansas City and compete for a position with them.

179. Plaintiff routinely dismissed these overtures so that he could remain in the City's employ for a minimum of 5 years to vest in his City pension plans. Plaintiff shared this goal with City officials even prior to the time at which he became employed by the City. Further, the search firm involved in soliciting Plaintiff to the City's employ was aware of the

27

understanding that Plaintiff would remain employed for 5 years so long as his job performance was satisfactory.

180. Subsequent to beginning his employment, Plaintiff continued to discuss this goal with City of Kansas City officials, including former City Manager Collins, City Manager Cauthen, and Assistant City Manager Rich Noll.

181. In or about July of 2003, a national search firm contacted Plaintiff stating that the City of Fort Lauderdale, Florida was seeking a Director of Aviation, and that Plaintiff would be a serious candidate if he elected to proceed.

182. At the time of this contact, Plaintiff had received no direct criticism, or negative feedback, regarding his job performance from Mr. Cauthen, Plaintiff's supervisor.

183. Mr. Cauthen was aware that a very large and critical construction project was underway at KCI.

184. In or about September, 2003, Mr. Cauthen became aware of Plaintiff's opportunity to interview with the City of Fort Lauderdale, and that Plaintiff was considered a serious candidate.

185. Mr. Cauthen was aware of Plaintiff's goal of remaining in the City's employ at least until he vested in his pension plans.

186. Defendant Cauthen said nothing to Plaintiff about any deficiencies in job performance.

187. Defendant Cauthen said nothing to Plaintiff to put him on notice that he intended to discharge Plaintiff soon, or otherwise advise Plaintiff that he should interview for the Fort Lauderdale or any other position.

28

188. In reliance on Mr. Cauthen's silence, Plaintiff told Mr. Cauthen, the search firm, and certain Florida officials that he was not a candidate for the job.

189. Two months later, Plaintiff was discharged.

190. As a result of the City, and Defendant Cauthen's actions, Plaintiff has suffered, and continues to suffer injury, and pecuniary and nonpecuniary damages.

## COUNT XII – DEFAMATION

191. Unless pled alternatively in support of this Count of the Complaint, Plaintiff repeats each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

192. City Manager Cauthen, Teresa Loar and Emanuel Cleaver II made oral comments at public meetings which identified Plaintiff.

193. The comments pertained to Plaintiff's ability to perform his job, and deprived the plaintiff of the benefit of public confidence.

194. The statements were false.

195. Defendants were at fault in publishing such oral statements. Defendants Cauthen, Loar and Cleaver made the oral statements with knowledge that the statements were false, or with reckless disregard for whether the comments were true or false at a time when Defendants has serious doubt as to whether the comments were true.

196. As a result of these false statements, Plaintiff was damaged in his career, and/or his reputation was harmed. Plaintiff was subjected to ridicule and contempt.

197. Plaintiff has been injured in that his business contacts and standing as a professional have been tarnished.

198. Defendants Cauthen, Loar and Cleaver are personally liable for such slander.

29

199. Defendant City of Kansas City is vicariously liable for the acts of its employees, or agents, during the scope of their employment or agency.

200. As a result of this slander, Plaintiff has suffered, and continues to suffer, injury and pecuniary and nonpecuniary damages.

## COUNT XIII – INJURIOUS FALSEHOOD

201. Unless pled alternatively in support of this Count of the Complaint, Plaintiff repeats each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

202. City Manager Cauthen, Councilwoman Loar and Defendant Emanuel Cleaver II made oral comments at public meetings which identified plaintiff.

203. The comments pertained to Plaintiff's competence and ability to perform his job.

204. The statements were false.

205. Defendants Cauthen, Loar and Cleaver intended to harm Plaintiff's interests by publishing such oral statements.

206. Defendants Cauthen, Loar and Cleaver made the oral statements with knowledge that the statements were false, or with reckless disregard as to truth or falsity of those statements.

207. Plaintiff has suffered pecuniary losses as a result of Defendants unlawful actions, including, but not limited to, attorneys' fees and costs.

208. Defendants Cauthen, Loar and Cleaver are personally liable for Plaintiff's losses.

209. Defendant City of Kansas City is vicariously liable for the acts of its agents or employees while acting in the scope of their employment or agency.

## COUNT XIV  – PRIMA FACIE TORT – CITY & CAUTHEN

210. Unless pled alternatively in support of this Count of the Complaint,  Plaintiff repeats each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

30

211. During his employment with the City of Kansas City, Missouri, Plaintiff served "at the pleasure" of Defendant City Manager Cauthen.

212. Defendant Cauthen intended to, and did in fact, discharge Plaintiff from the City's employ.

213. Defendant Cauthen discharged Plaintiff approximately 9 months before Plaintiff would vest in his pension plans with the City.

214. Defendant Cauthen intended to, and did in fact, request that the City Council vote on Plaintiff's agreed upon severance package.

215. In the event that the actions pled in the preceding four paragraphs are found not to be in violation of law, as pled alternatively in Counts I through XIII above, then in that event Defendant Cauthen's actions were lawful.

216. By discharging Plaintiff months before he would vest in the pension plans with the City, Defendant Cauthen intended to injure Plaintiff.

217. Further, Defendant Cauthen intended to injure Plaintiff by requiring a City Council vote upon the severance package which Plaintiff had negotiated with the City.

218. Defendant Cauthen's actions were without justification, or sufficient justification.

219. Defendant Cauthen is personally liable for his actions.

220. Defendant City of Kansas City is vicariously liable for the acts of its agents or employees, including Defendant Cauthen, who was acting within the scope of his employment or agency.

221. As a result of Defendant's actions, Plaintiff has suffered, and continues to suffer injury, and pecuniary and nonpecuniary damages.

## COUNT XV – PRIMA FACIE TORT – DEFENDANTS NASH & RILEY

222. Unless pled alternatively in support of this Count of the Complaint, Plaintiff repeats each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

223. Defendants Nash and Riley intended to, and did in fact, vote on the Plaintiff's severance package.

224. In so voting, City Council members Riley, and Nash acted officially, but in an administrative capacity.

225. Defendants Riley, and Nash intended to injure Plaintiff by voting "no" on his agreed upon severance package.

226. Defendants Riley, and Nash did in fact vote "no"on Plaintiff's agreed upon severance package.

227. In the event that the actions pled in the preceding four paragraphs are found not to be in violation of law, as pled alternatively in Counts I through XIII above, then in that event Defendants Riley and Nash's actions were lawful.

228. Defendant Riley, and Nash's actions were without justification, or sufficient justification.

229. Defendants Nash and Riley are personally liable for their actions.

230. Defendant City of Kansas City is vicariously liable for the acts of Mr. Nash and Mr. Riley who were acting within the scope of their employment or agency.

231. As a result of Defendants' actions, Plaintiff has suffered, and continues to suffer injury, and pecuniary and nonpecuniary damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court:

1.      Assume jurisdiction over this action;

2.      Award back pay, and prejudgment interest;

3.      Order Defendant City of Kansas City to make Plaintiff whole by providing him with all lost wages, earnings, and payment of all benefits he would have received had it not been for Defendants' unlawful actions, including, but not limited to, restoration of all fringe benefits, including normal salary increases, vacation, sick leave, pension and retirement benefits, lost social security benefits, with pre-judgment interest, in an amount to be proven at trial;

4.      Award Plaintiff liquidated damages pursuant to 29 U.S.C. § 626(b) (ADEA);

5.      Order Plaintiff reinstated to his position as Director of Aviation for the City of Kansas City, Missouri, or in the alternative award him front pay;

6.      Order Defendant City of Kansas City, Missouri to hold a public hearing allowing Plaintiff to clear his name;

7.      Award Plaintiff actual damages in an amount to be proven at trial;

8.      Award Plaintiff compensatory damages for emotional pain and suffering, inconvenience, mental anguish, lost earning power, and injury to his career, employability, character, and reputation, and future pecuniary losses in an amount to be proven at trial;

9.      As against Defendants Wayne Cauthen, Troy Nash, Terry Riley, Teresa Loar, and Emmanuel Cleaver II, award Plaintiff punitive damages in an amount sufficient to

Case 4:05-cv-00599-DW   Document 1   Filed 07/01/05   Page 33 of 34

compensate Plaintiff for harms inflicted and to deter future unlawful, discriminatory, or unconstitutional acts;

10. Award Plaintiff his reasonable attorneys' fees, including expert witness fees, if any, and the costs of this cause; and

11. Grant such further and additional equitable and legal relief as this Court may deem just and proper.

DATED this the 1st day of July, 2005.

Respectfully submitted,

**LAW OFFICES OF DOUGLAS L. CARTER, P.C.**

By:      **/s/ Douglas L. Carter**
Douglas L. Carter      MO # 35759
Third Floor
1220 Washington Street
Kansas City, Missouri 64105
Phone:      (816) 283-3500
Fax:      (816) 283-3084
Email:      doug@carterlaw.org

**COUNSEL FOR PLAINTIFF**

34